THOMAS and C. R. HAYS *v.* T. W. DALTON *et al.*

LIENS.  *Priority.  Attorney.  Purchaser.*  The lien of counsel of complain ant upon the rents of a tract of land recovered, which had been sold under void judicial proceedings, is inferior to that of purchaser upon the excess of such rents over betterments and taxes, for the repayment. of his purchase money at such void sale.

FROM GRAINGER.

Appeal from the Chancery Court at Dandridge.. H. C. SMITH, Ch.

J. W. YOE for complainant.

———— ———— for defendant.

FREEMAN, J., delivered the opinion of the court.

The lands of the complainants, which were sold under the void proceedings, were two tracts, to-wit: 1st, a tract owned by Thos. and C. R. Hays jointly ;.

2d, a tract owned by C. R. Hays alone. The suits against them under which the lands were sold were three, to-wit: 1st, a bill by Thomas Lathim upon a ·demand against Thos. and C. R. Hays jointly for $559.66, under which an attachment was levied on both tracts; 2d, a bill by Gill against C. R. Hays alone for a demand of some $1,500, with credits. Thomas Hays was charged to be surety on the note, but was not ·sued. Under this bill the separate tract of C. R. Hays and also his interest in the joint tract of Thomas and C. R. Hays was attached; 3d, a bill by Gill against Thomas Hays alone upon a separate note of some $57, under which Thomas Hays' interest in the joint tract was attached.

The causes were consolidated, and in June, 1865, there was a decree in favor of Lathim against both Thomas and C. R. Hays for $711.06; in favor of Gill against C. R. Hays for $1,085.84; against Thos. Hays for $71.55.

Both tracts were sold and bought by Dalton, the tract owned by Thomas and C. R. jointly for $1,100, the separate tract of C. R. Hays for $919. Out of the purchase money all the decrees were paid.

By the decree of this court the complainants had the proceedings declared void, and recovered back their· lands, but they were required to refund to Dalton the money paid, which went to discharge the debts against them in said causes, the justice of which was not denied, and a lien was declared on the land in favor ·of Dalton. The money paid on the joint recoveries was declared a lien on the joint land as well as the

separate land, but such of the land as is owned by
one only of the complainants, was not to be held
liable for the debt of the other, which simply means
that the lands of neither of the complainants was to
be held liable for debts they did not owe.    The ques-
tion is made as to whether this lien was intended to
be on the basis of the *decrees* or *recoveries* in said
causes or the *debts*.    The question has reference more
particularly to the liability of Thomas Hays; that is,
was a lien declared on his land for the $1,500 note
to Gill?    He was said to be a surety on said note,
but was not sued in that case.    The words "debt"
and "recovery" were used somewhat indiscriminately
in the decree, and the question now made was not
called to the attention of the court, but the intention
evidently was to declare the lien in favor of Dalton
to the extent that under color of void proceedings he
paid the debts of the complainants; but it was not
intended to allow him the benefit of the payments
made, otherwise than under the direction of said decree,
that is, on other outside debts.    Thomas Hays was
not sued on the $1,500 note to Gill, and there could
have been no decree in said causes appropriating the
proceeds of his land to the payment of Gill's recovery
on that note, and therefore it cannot be said that
Dalton, under the direction of that decree, so appropri-
ated it, and the point made in Thos. Hays' favor seems
to be well taken.    But practically we do not see why
Dalton may not have the benefit of the liens so ad-
justed as to give him all he asks or can claim.    A
lien on the half of Thomas Hays in the joint tract—

all he owns—can only be declared as to the debts for which he was sued and declared liable in the former cases, that is, the debt of Lathim for $711, and the smaller debt to Gill. A lien on C. R. Hays' land (both his separate tract and his half of the joint tract), may be declared as to all the debts, except the small debt of Thomas Hays. Now why may not Dalton enforce his lien on Thomas Hays' land for the whole of the Lathim debt as well as Thomas Hays' small debt, so as to enable him (Dalton) to throw the lien as to the $1,085 recovery of Gill on the lands of C. R. Hays, and thereby enable him to realize all? It is manifest that in the original causes, if they had been valid proceedings, the fund might have been so appropriated as to have satisfied all the debts. Lathim had both Thomas and C. R. Hays liable to him, and had all their lands attached. Gill had sued Thomas Hays in one case and C. R. Hays in the other. It would have been perfectly legitimate to have required Lathim to exhaust the proceeds of Thomas Hays' land in payment of his debt (after paying Gill's smaller debt), in order to leave to Gill the proceeds of C. R. Hays' land, or as much as possible thereof, for the payment of his debt against him, as for this debt he could not appropriate the proceeds of Thomas Hays' land. This was doubtless the way it was appropriated. Under the color of these judicial proceedings Dalton paid his money; the payment would have been legitimate if the proceedings had been valid, and we think the purpose of the former decree and the equity of the case is, that the liens may be adjusted and

·enforced so as to enable Dalton, if necessary, to enforce the lien against Thomas Hays' land for the whole of the debts for which he was held liable in said causes, so as to leave C. R. Hays' land to secure the remainder. This is not declaring a lien on Thomas Hays' land for debts he was not held liable for in said causes. He was liable for the whole of the Lathim debt. Whether as between him and C. R. Hays he ought to pay the whole of it, is immaterial. They may be left to adjust the equities between themselves.

The other questions presented in this case are on exceptions to the master's report as to rents, and value of improvements, and as to a lien in favor of the attorneys of complainant on the rents, as against the right of Dalton to appropriate them for his reimbursement, which last was refused.

The chancellor seems to have disregarded the report of the master as to rents and improvements, and fixed a gross sum for himself to be allowed. We cannot say precisely what was the basis of his conclusion or rather theory on which it rests. We but see that the report of the master is not correct, nor does the proof furnish to our minds a correct basis on which to settle· the question of the enhanced value of the lands by reason of the improvements. We think the large weight of the proof is in favor of allowing one dollar per acre for the joint land, and thirty dollars per annum for the other lands. Witnesses giving this estimate, who are familiar with the land, say not more than half of it can be cultivated; besides, from all the proof, it is evidently poor land.

As to the value of improvements, all we can do is to remand the case for proof and a report with the following directions; that is, that the inquiry shall be to ascertain what permanent improvements have been put on the lands, and what was the increased value of the lands at the time of complainant's recovery of the lands, by reason of such improvements being on the land at the time. In other words, what is the difference between the value of the land with the improvements on it, at the time specified, and without them. The estimate made by the testimony and made the basis of the master's report, are the cost of putting the improvements on the land, as for instance the cost of putting up a new rail fence is fixed at the value of the rails, to-wit, $1.25 per hundred, when the fence had been put up probably six years. The fence being put on the land, the proper inquiry was as to the difference in value of the land at the time of recovery, as it then was, and the value if the fence was not there in the condition it then was—and so as to other improvements.

The question on application of the attorneys of complainant to have a lien declared on the surplus of rents due, after deducting the improvements and taxes, superior to the claim of the purchaser on this sum for reimbursement of money paid by him, was decided by the chancellor against the attorneys—upon consideration, we think correctly. It is true, in the case of *Wright* v. *Duffield,* 2 Baxt., a case of rescision of sale by a married woman, where a lien was declared on the land in favor of the purchaser, this court,

in an opinion by Burton, Special Judge, gave the attorneys a lien on the rents over the claim of the purchaser. On full consideration of this case, this court is now of opinion that case was improperly ruled on this question, and is to that extent overruled, and this lien will not be allowed, except in subordination to the rights of Dalton to be reimbursed his purchase money.

A decree will be drawn in accord with this opinion, and case remanded. Costs of this court be paid equally by complainants and respondents.